### MOTION INFORMATION STATEMENT

**Docket Number(s):** _____          _____ Caption [use short title] _____

**Motion for:** _____

_____

_____

Set forth below precise, complete statement of relief sought:

_____

_____

_____

_____

_____

_____

**MOVING PARTY:** _____          **OPPOSING PARTY:** _____

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner          ☐ Appellee/Respondent

**MOVING ATTORNEY:** _____          **OPPOSING ATTORNEY:** _____

[name of attorney, with firm, address, phone number and e-mail]

_____          _____

_____          _____

_____          _____

Court-Judge/Agency appealed from: _____

**Please check appropriate boxes:**          **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):          Has request for relief been made below?          ☐ Yes   ☐ No

☐ Yes  ☐ No (explain): _____          Has this relief been previously sought in this Court?          ☐ Yes   ☐ No

_____          Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:

☐ Unopposed  ☐ Opposed  ☐ Don't Know          _____

Does opposing counsel intend to file a response:

☐ Yes  ☐ No  ☐ Don't Know          _____

_____

_____

Is oral argument on motion requested?          ☐ Yes   ☐ No   (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?          ☐ Yes   ☐ No   If yes, enter date: _____

**Signature of Moving Attorney:**

_____ **Date:** _____          Service by:  ☐ CM/ECF          ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

**Addendum A to Motion Information Statement**
**<u>Opposing Counsel</u>**


**<u>Counsel for Plaintiff-Appellee NML Capital, Ltd.</u>**

Theodore B. Olson
Matthew D. McGill
Jason J. Mendro
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500
tolson@gibsondunn.com
mmcgill@gibsondunn.com
jmendro@gibsondunn.com


**<u>Counsel for Defendant-Appellee Republic of Argentina</u>**

Carmine D. Boccuzzi, Jr.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY  10006
(212) 225-2000
cboccuzzi@cgsh.com

Jonathan I. Blackman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
City Place House
55 Basinghall Street
London, EC2V 5EH
England
+442076142245
jblackman@cgsh.com

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| NML CAPITAL, LTD.<br><br>                Plaintiff-Appellee,<br>   -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                Defendant-Appellant. | No. 14-2922 (L)<br>No. 14-2938 (L)<br>No. 14-3055 (L) |
| AURELIUS CAPITAL MASTER, LTD.<br><br>                Plaintiff-Appellee,<br>   -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                Defendant-Appellant. | No. 14-2939 (L)<br>No. 14-2999 (L) |
| AURELIUS CAPITAL MASTER, LTD.,<br><br>                Plaintiff-Appellee,<br>   -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                Defendant-Appellant. | No. 14-2924 (L)<br>No. 14-2940 (L)<br>No. 14-3016 (L)<br>No. 14-3022 (L)<br><br>*(captions continue on following page)* |

**APPELLANTS EURO BONDHOLDERS' EMERGENCY MOTION TO
EXPEDITE AND CONSOLIDATE APPEALS**

BLUE ANGEL CAPITAL I LLC,

> Plaintiff-Appellee,

-against-

THE REPUBLIC OF ARGENTINA,

> Defendant-Appellant.

No. 14-2941 (L)
No. 14-3001 (L)

---

OLIFANT FUND, LTD.,

> Plaintiff-Appellee,

-against-

THE REPUBLIC OF ARGENTINA,

> Defendant-Appellant.

No. 14-3002 (L)

---

PABLO ALBERTO VARELA, et al.,

> Plaintiff-Appellee,

-against-

REPUBLIC OF ARGENTINA,

> Defendant-Appellant.

No. 14-2925 (L)

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Knighthead Capital Management, LLC is a Delaware limited liability company. There is neither a parent company to Knighthead Capital Management LLC, nor a publicly held corporation that owns 10% or more of its stock.

Perry Capital, LLC is a Delaware limited liability company. There is neither a parent company to Perry Capital, LLC, nor a publicly held corporation that owns 10% or more of its stock.

Monarch Master Funding 2 (Luxembourg) S.à r.l. is a Luxembourg private limited liability company that is 100% owned by Monarch Master Funding 1 (Luxembourg) S.à r.l. Monarch Master Funding 1 (Luxembourg) S.à r.l. is a Luxembourg private limited liability company that is 100% owned by Monarch Master Funding Ltd. Monarch Master Funding Ltd is a Cayman Islands corporation and has no parent corporation, nor does any publicly held corporation own 10% or more of its stock.

QVT Fund IV LP is a Delaware limited partnership. QVT Fund V LP is a Cayman Islands limited partnership, and Quintessence Fund L.P. is a Cayman Islands limited partnership. The general partner of all three entities is QVT Associates GP LLC. There is neither a parent company to QVT Fund IV LP, QVT

Fund V LP, nor Quintessence Fund L.P., nor a publicly held corporation that owns 10% or more of their stock.

Centerbridge Partners, L.P. is a Delaware limited partnership, of which Centerbridge Partners Holdings, LLC is a general partner. There is neither a parent company to Centerbridge Partners, L.P., nor a publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................6

    A.    The Underlying Injunction And First Appeal ...........................................6

    B.    The Second Circuit Decision ..................................................................8

    C.    Recent District Court Proceedings........................................................10

    D.    The Euro Bondholders' Actions in Belgium and England ....................14

ARGUMENT ............................................................................................................16

    A.    Expedited Appeal of the August 6 Order is Warranted .........................16

    B.    Proposed Expedited Schedule................................................................19

    C.    Consolidation of Related Appeals. ........................................................20

CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*EM Ltd. v. Republic of Argentina,*
    473 F.3d 463 (2d Cir. 2007).................................................................................... 16

*Hanly v. Mitchell,*
    60 F.2d 640 (2d Cir. 1972)...................................................................................... 16

*NML Capital Ltd. v. Republic of Argentina,*
    699 F.3d 246 (2d Cir. 2012)...................................................................................... 7

*NML Capital, Ltd. v. Republic of Arg.,*
    727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) .................................. 2, 8, 9

The Euro Bondholders[1] respectfully submit this emergency motion to expedite and consolidate its appeal in these cases from the order dated August 6, 2014, entered by the United States District Court for the Southern District of New York (Griesa, J.) (the "August 6 Order"). Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (Ex. A).[2]

## PRELIMINARY STATEMENT

On November 21, 2012, the United States District Court for the Southern District of New York issued an injunction prohibiting the Republic of Argentina ("the Republic") from making payments with respect to certain bonds issued by the Republic, following its 2001 default, pursuant to 2005 and 2010 exchange offers ("Exchange Bonds"), unless it simultaneously made a "ratable payment" to certain plaintiff holdout creditors who elected not to exchange their bonds in 2005 and 2010 (the "Injunction"). *See generally NML Capital, Ltd. v. Republic of Argentina,* No. 08 Civ. 6978 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) (Ex. B). Although the Injunction enjoined only the Republic, the district court

---

[1] The Euro Bondholders are Knighthead Capital Management, LLC; Perry Capital, LLC, Monarch Master Funding 2 (Luxembourg) S.á.r.l.; QVT Fund IV LP; QVT Fund V LP; Quintessence Fund L.P.; and Centerbridge Partners LP (each on behalf of itself or one or more investment funds or accounts managed or advised by it).

[2] "Ex. ___ " refers to the exhibits to the Declaration of Christopher J. Clark, dated September 11, 2014, submitted herewith. These exhibits are from *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) as well as the Belgian and English actions referenced in this filing.

expressly warned various "Participants" in the global payment process on the Exchange Bonds that they were "prohibited from aiding and abetting any violation of this ORDER" per operation of Federal Rule of Civil Procedure 65(d). Injunction § 2(e) (Ex. B).

The Euro Bondholders warned in their previous filing to this Court as an interested non-party in *NML Capital, Ltd. v. Republic of Arg.*, 727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*"), that the effect of the district court's injunction ultimately would be to hold hostage innocent third-party bondholders, spawn litigation around the world, and result in conflicting obligations under different foreign laws in different foreign forums. Unfortunately, that prediction has proven accurate. The district court has since made clear its view that any financial institution that makes a payment for the benefit of the exchange bondholders (who all agree are innocent third parties) with funds initially paid by the Republic would violate the Injunction under Federal Rule of Civil Procedure 65(d). Meanwhile, the district court has been flooded with motions for clarification as numerous financial institutions seek to reconcile their competing obligations under the laws of countries from four different continents.

Members of the Euro Bondholders group, who possess euro-denominated bonds which are governed by English law and are paid entirely outside the United States ("Euro Bonds"), largely through foreign entities, have brought suit in

various foreign jurisdictions to affirm the obligations under foreign law of various participants in the payment process on the Euro Bonds, including the Bank of New York Mellon ("BNY" or "BNYM"), the Bank of New York Depositary (Nominees) Limited ("BNY London"), the Bank of New York S.A./N.V. ("BNY Brussels") and Euroclear. In May 2013, various members of the Euro Bondholders sued in Belgium to affirm the obligations under foreign law of various Belgian participants in the payment process, including BNY Brussels and Euroclear. In August 2014, various members of the Euro Bondholders also initiated proceedings in the English High Court of Justice against BNYM and BNY London, to affirm, among other things, those parties' duties under English law to transfer any payments made by the Republic for the benefit of the Euro Bondholders.

In late June 2014, the Republic made various interest payments of approximately $231 million and €226 million (the "Coupon Funds") to separate BNYM accounts at Banco Central de la Republica de Argentina ("Banco Central") in Argentina for the purpose of making a coupon payment to exchange bondholders, including the Euro Bondholders. The Republic also paid roughly $300 more million on various peso-denominated and US dollar-denominated bonds governed by Argentine law and yen-denominated bonds governed by Japanese law.

On August 6, 2014, the district court issued an order resolving that the Republic's payment violated the Injunction, and interpreting the Injunction to

prohibit BNYM from making any payments for the benefit of the beneficial holders of those exchange bonds, including the Euro Bondholders. *See* August 6 Order ¶ 1-2 (Ex. A). Moreover, the district court purported to rule—without a hearing—that BNYM would not be liable for failing to make payments on the Exchange Bonds as against any claims, including claims that had not yet been brought, by non-parties to the action before the court, which are governed by foreign law on which the Court received no briefing and did not purport to reference ("Exculpation Provision"). *See id.* ¶ 4.

Instead of working to represent the interests of the innocent beneficiaries—for whom it is Trustee under the indenture dated June 2, 2005 between the Republic and by BNYM as Trustee (the "Indenture")—BNYM and its subsidiaries have focused solely on inoculating themselves from responsibility and liability. Indeed, they have worked directly with plaintiffs to influence and exploit developments in the United States litigation while discouraging the appropriate forums—including England and Belgium—from hearing the Euro Bondholders' claims or affirming the obligations of BNYM and its foreign subsidiaries under foreign law. To that end, without even purporting to consider what is best for the bondholders for whom they serve as Trustee, BNYM, BNY London, and BNY

Brussels all have pointed to the August 6 Order as a reason why the proceedings abroad should be delayed or stayed.[3]

On September 2, 2014, the Belgian Court postponed a merits hearing long scheduled for September 9, 2014, and instead ordered supplementary briefing over the next three months on recent developments including the August 6 Order. Order, Tribunal de Commerce [Comm.] [Commercial Court of Brussels], Brussels, 10 ch. Sept. 2 2014, Case No. 5650/13 (Belg.) ("Order of the Commercial Court of Brussels") (Ex. E). BNYM and BNY London likewise have sought to stay English proceedings pending resolution of this and other appeals from the August 6 Order. *See* BNYM Application to the English High Court of Justice (Ex. D).

On August 14, 2014, this Court granted Citibank, N.A.'s motion to expedite its appeal from a similar order of the district court prohibiting it from making payments with respect to certain bonds issued by the Republic of Argentina that are governed by Argentine law, pursuant to the Injunction (the "July 28 Order"). Like the Euro Bondholders' appeal, the Citibank N.A. appeal presents questions about whether and to what extent the district court may prohibit third-party banks,

---

[3] *See, e.g.*, Petition of BNYM Brussels to Chairman of the 10th Chamber of the French Brussels Commercial Court, dated August 8, 2014, Tribunal de Commerce [Comm.] [Commercial Court of Brussels], Brussels, 10 ch., Case No. 5650/13 (Belg.) ("BNYM Petition to the Commercial Court of Brussels") (Ex. C); Application of BNYM and BNY London to the High Court of Justice, Chancery Division, dated September 5, 2014, Knighthead Master Fund LP v. The Bank of New York Mellon, (2014) EWHC (Ch), Claim No. HC14B03236 (Eng.) ("BNY Application to the English High Court of Justice") (Ex. D).

which are not parties to the underlying action between NML and Argentina, from fulfilling their independent contractual obligations under foreign law to make payments for the benefit of the beneficial holders of Exchange Bonds.

Expedited treatment is warranted for several reasons. First, BNYM and various BNYM subsidiaries are seeking to use the August 6 Order and the Euro Bondholders' appeal of that Order to delay foreign proceedings to affirm the obligations under foreign law of various participants in the Euro Bond payment process, in a fast moving dispute in which substantial quantities of the Euro Bondholders' euros are at stake. Expedited treatment will enable this Court to bring to an end those attempts at delay. Second, the considerable overlap between the Euro Bondholders' and Citibank N.A.'s appeals would make expedited treatment beneficial to this Court and to parties affected by the underlying orders in those cases. Third, ongoing efforts by plaintiffs in response to the August 6 Order seeking to require BNYM to "turn over" the Coupon Funds to them underscore the need for expedited resolution of the important issues presented by these appeals. The Euro Bondholders therefore respectfully move to expedite the appeal.

## BACKGROUND

### A.    The Underlying Injunction And First Appeal

On February 23, 2012, the district court entered injunctions that enjoined the Republic from making further payments on bonds issued pursuant to the

Republic's 2005 and 2010 Exchange Offers until it concurrently or in advance made a ratable payment to Plaintiffs (the "February 23 Orders"). The February 23 Orders further prohibited "all parties involved, directly or indirectly, in advising upon, preparing, processing or facilitating any payment on the Exchange Bonds" from "aiding and abetting any violation . . . including any further violation by the Republic . . . such as any effort to make payments under the . . . Exchange Bonds" without also making a ratable payment to Plaintiffs. The February 23 Orders did not name the third parties to which it purportedly applied.

The Republic appealed the February 23 Orders to this Court, which affirmed the Orders but expressed "concerns" with their "application to third parties," and remanded the case to the district court to "more precisely determine the third parties to which [the injunction would] apply before [this Court could] decide whether [its] application to them is reasonable." *NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012) ("*NML I*").

On remand, BNYM filed a declaration (the "Binnie Declaration") explaining the payment process for the different Euro Bonds and USD Bonds. *See* Declaration of Kevin F. Binnie, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 16, 2012) (Ex. F). The payment process for the Euro Bonds is demonstrably different than the payment process for the USD Bonds. To make a payment on the Euro Bonds, four distinct transfers must take

place, none of which enter the United States. First, the Republic transfers funds to an account "in the name of [BNYM] at Banco Central" in Argentina. *Id.* at ¶ 10. Second, BNYM transfers the funds to "a Deutsche Bank account in Frankfurt, Germany," in the name of BNY Brussels. *Id.* Third, BNY Brussels transfers the funds to either Euroclear or Clearstream, two foreign clearinghouses located in Belgium and Luxembourg, respectively. *Id.* at ¶ 8. Fourth, the clearinghouse transfers funds to beneficial holders, including the Euro Bondholders. *Id.* at ¶ 8.

On November 21, 2012, the district court issued the Injunction, amending its February 23 Orders after expedited briefing and without a hearing. The court specifically instructed various third-party financial institutions that process payments to exchange bondholders, including BNYM, Euroclear, Clearstream, and BNY London, that they should consider themselves "bound by the terms of this ORDER as provided by Rule 65(d)(2) and prohibited from aiding and abetting any violation of this ORDER." Injunction § 2(e) (Ex. A).

## B. The Second Circuit Decision

The Republic appealed again, and the Euro Bondholders filed a motion to intervene on appeal, which this Court granted on December 6, 2012. Dec. 6, 2012 Order, No. 12-105. On August 23, 2013, the Court affirmed the Injunction. *See generally NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*"). Importantly, however, it

declined to decide whether third-party financial institutions were prohibited by the Injunction from fulfilling their independent contractual duties to make payments for the benefit of the beneficial holders of the Exchange Bonds. *See id.* at 243.

As the Court explained, "the amended injunctions do not directly enjoin payment system participants." *Id.* And because the Republic had not yet violated the Injunction, the Court explained that questions of the Injunction's applicability to third parties were "premature." *Id.* This Court left undecided, therefore, whether third-party financial institutions would be acting in "active concert" with or "aiding and abetting" Argentina within the meaning of Federal Rule of Civil Procedure 65 by fulfilling their independent contractual duties to make payments for the benefit of customers or beneficial holders, who all agree are innocent third parties to NML's dispute with Argentina, and who indisputably are not prohibited by the Injunction from receiving payments themselves.

This Court also noted that the district court may have extended its Injunction to the Euro Bond payment process under the false impression that the payment process for those bonds takes place in the United States. As this Court explained, if "the payment process for [the Euro Bonds] takes place entirely outside the United States, then the district court *misstated that . . . the Exchange Bond payment 'process, without question takes place in the United States.'" NML II*, 727 F.3d at 244 (emphasis added). This Court found that "possible misstatement ... of no

9

moment" at the present because "the amended injunctions [the Injunction] enjoin no one but Argentina," and the Republic had not yet violated the injunction. *Id.* As such, this Court left for another day questions about whether the Injunction could be properly applied to the mostly foreign participants in the entirely foreign payment process on the foreign-law-governed Euro Bonds.

The Republic filed a petition for writ of certiorari to the United States Supreme Court on February 18, 2014. After the petition was denied, the Second Circuit lifted its stay of the Injunctions on June 18, 2014.

### C.   Recent District Court Proceedings

On June 27, 2014, the district court held a hearing during which it was disclosed that on June 26, 2014, the Republic made various interest payments of approximately $231 million and €226 million to separate BNYM accounts at Banco Central in Argentina for the purpose of making a coupon payment to exchange bondholders, including the Euro Bondholders.

Under the terms of the Indenture dated June 2, 2005, signed by the Republic and by BNYM as Trustee (the "Indenture"), the Republic no longer possesses any property right to those funds. Indenture § 3.5(a) (Ex. G). Rather, as BNYM itself has repeatedly acknowledged, BNYM is holding the funds in trust solely for the benefit of the Holders of the Euro Bonds and BNYM itself (which has certain limited property interests in the payments itself). *See, e.g.,* Binnie Declaration at 3

("The Bank of New York Mellon serves as the paying agent [] for the exclusive benefit of the holders' of the Bonds."); BNYM Petition to the Commercial Court of Brussels at 4 ¶ 7 ("The main task of BNYM as a *trustee* is to receive payments from the Republic of Argentina under the New Bonds and to distribute such payments to [beneficial] Bonds holders.") (emphasis in original) (Ex. C).

It is also undisputed that BNYM—the Indenture Trustee—possesses a contractual obligation to make payment to the Holders of the exchange bonds for the benefit of the beneficial holders of those bonds, including the Euro Bondholders. Indenture § 3.5(a) (Ex. G). Nonetheless, during the June 27 hearing, the district court stated that it considered the Republic's payment to BNYM "illegal" and declared that "*this payment cannot be made, and anybody who attempts to make it will be in contempt of court by the express terms of this order.*" June 27, 2014 Hearing Tr. at 23:19, 23:22-24 (emphasis added) (Ex. H). BNYM explained that in light of the Court's orders, BNYM had "not further transferred or distributed any funds" for the benefit of the beneficial holders of the bonds, notwithstanding its contractual obligations under the Indenture. *Id.* at 15:14-15.

While BNYM refused to make payment on the Coupon Funds, various parties petitioned the district court to seize control of that money. During the June 27, 2014 hearing itself, plaintiffs—and even BNYM, despite BNYM's obligations under the Indenture—proposed to interplead the funds in New York. *Id.* at 8:3-8,

32:18-22. Two groups of additional plaintiffs since have filed "turnover" motions, seeking orders directing BNYM to pay to those plaintiffs the funds BNYM is holding in trust exclusively for the benefit of exchange bondholders like the Euro Bondholders, and BNYM.[4]

Although the Euro Bondholders are non-parties to NML's dispute with Argentina, they have repeatedly attempted to bring to the district court's attention the significant problems that follow from the application of the Injunction to the Euro Bond payment process. Nonetheless, the district court has refused to clarify whether the Injunction is intended to direct foreign third parties to violate their obligations under the Indenture and corresponding foreign laws. On July 14, 2014, the Euro Bondholders filed a motion for clarification on those questions ("Motion

---

[4] On August 7, 2014, an initial group of plaintiffs (the "Applestein Plaintiffs") filed a motion (the "Applestein Turnover Motion") seeking an "order directing [BNYM] to turnover to the Italian Judgment Creditors [the Applestein Plaintiffs] funds held on behalf of the Republic, or so much of the funds as is sufficient to satisfy the judgments and post-judgment interest." Plaintiffs' Turnover Motion, *Applestein v. Republic of Argentina*, 02 Civ. 04124 (TPG) (S.D.N.Y. Aug, 7 2014) (Ex. I). The briefing on that motion before the district court is expected to be complete on September 30, 2014. See Joint Letter from Plaintiffs and BNYM to Judge Griesa, dated August 20, 2014, at 2, *Applestein v. Republic of Argentina*, 02 Civ. 04124 (TPG) (S.D.N.Y.) (jointly requesting a briefing schedule to conclude on September 30, 2014) ("Turnover Motion Joint Request") (Ex. J). Soon after, on August 18, 2014, still another plaintiff ("Dussault") filed a separate motion (the "Dussault Turnover Motion") likewise seeking "an order to be issued against [BNY], the trustee for [the] Republic of Argentina, to pay [Dussault] or deliver to [Dussault] funds deposited by the Republic with BNY in the amount to satisfy [Dussault's] judgment and post-judgment interest." Plaintiff's Turnover Motion, *Dussault v. Republic of Argentina*, 06 Civ.13085 (TPG) (S.D.N.Y. Aug. 18, 2014) (Ex. K).

for Clarification"), but the Court did not allow oral argument on that motion and never decided it. Motion for Clarification, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. July 14, 2014) (Ex. L).

Instead, on August 6, 2014, the district court issued an order formalizing the application of the Injunction to BNYM (presumably through the operation of Rule 65). In relevant part, the August 6 Order concluded: (1) that "the payment by Argentina to BNY [on June 27, 2014] was illegal and a violation of the Amended February 23 Orders"; (2) "BNY shall retain the Funds in its accounts at the BCRA pending further Order of this Court, and *shall not make or allow any transfer of the Funds unless ordered by the Court*"; and (3) "BNY shall incur no liability under the Indenture governing the Exchange Bonds or otherwise to any person or entity for complying with this Order and the Amended February 23 Orders." August 6 Order (Ex A). The district court failed to acknowledge or respond to the serious objections that the Euro Bondholders had raised by letter.

The district court's August 6 Order expressly prohibits BNYM from making payments outside the United States with money in its possession that all parties to the Indenture agree now belongs to the Euro Bondholders. Inexplicably, it also purports to exculpate BNYM as against any *future* claims that have not been made respecting the Euro Bonds, by *any* party—including non-parties to NML's dispute

with Argentina—even though such claims would be governed by English law on which the district court did not purport to rely. *Id.* ¶ 4.

On July 29, 2014, Citibank N.A. filed a notice of appeal from the July 28 Order, a separate, but related order of the district court, which prohibited Citibank N.A. from making payments in Argentina respecting exchange bonds governed by Argentine law. *See* Emergency Motion of Citibank, N.A. to Expedite and Consolidate Appeals, NML Capital, Ltd. v. Republic of Argentina, No. 14-2702-cv(L) (2d Cir. Aug. 6, 2014). On August 14, 2014, this Court granted Citibank N.A.'s motion to expedite its appeal, and set oral argument for September 18, 2014. The issues that Citibank N.A. raises in its opening brief include: (1) the Injunction's application to non-party banks such as Citibank N.A. is inconsistent with equity, and (2) non-party banks such as Citibank N.A. are not acting in "active concert" with the Republic, within the meaning of Federal Rule of Civil Procedure 65(d). *See* Citibank N.A. Br. 19-22, 25-27. The Citibank N.A. appeal also puts at issue the propriety of the district court's injunction as applied to financial institutions who are obligated to make payments under foreign law.

## D.    The Euro Bondholders' Actions in Belgium and England

In May 2013, the Euro Bondholders initiated proceedings in Belgium to affirm the obligations under foreign law of various Belgian participants in the payment process on the Euro Bonds, including BNY Brussels and Euroclear. The

Euro Bondholders have argued, *inter alia*, that the Injunction is unenforceable in Belgium as a matter of Belgian statutory law, and that the Belgian participants in the Euro Bond payment process are obligated to pass through payment to the Euro Bondholders. On September 5, 2013, the court issued a scheduling order setting argument on the merits for September 9, 2014. Substantial briefing followed.

On August 8, 2014—just two days after the district court issued the Order that is the subject of this appeal—BNY Brussels filed a petition to the Belgian court, urging it to delay proceedings until 2015 in light of "significant factual developments" in the US litigation between NML and Argentina, including the August 6 Order. *See* BNYM Petition to the Commercial Court of Brussels (Ex. C). Over the Euro Bondholders' objection, the Brussels Court granted BNY Brussels' request to delay proceedings and submit supplemental briefing. *See* Order of the Commercial Court of Brussels (Ex. E).

Also in August 2014, members of the Euro Bondholders group initiated proceedings in England against BNYM and BNY London. The action seeks a declaration that the Coupon Funds held by BNYM are held in trust for BNY London and for the beneficial holders of those bonds, including the Euro Bondholders. The action also seeks to affirm BNYM and BNY London's obligations to make payment for the benefit of the beneficial holders of the Euro

Bonds, as well as resolve that BNYM is breaching its contractual obligations under English law by failing to make payment of the Coupon Funds.

On September 5, 2014, BNYM and BNY London applied for an order staying proceedings in England pending the final determination of (1) the Euro Bondholders' motion for clarification (on which the district court did not act); (2) the Euro Bondholders' appeal of the August 6 Order; and (3) the Republic's appeal of the August 6 Order. *See* BNYM Application to the English High Court of Justice (Ex. D). That application remains pending.

## ARGUMENT

### A. Expedited Appeal of the August 6 Order is Warranted

It is the practice of this Court to expedite appeals where "the matter [is] urgent . . . ." *Hanly v. Mitchell*, 460 F.2d 640, 642 (2d Cir. 1972); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 471 (2d Cir. 2007); Fed. R. App. P. 2 ("a court of appeals may – to expedite its decision . . . suspend any of these rules in a particular case and order proceedings as it directs"). This Court retains particular discretion to direct an expedite briefing schedule. *See* Fed. R. App. P. 31(a)(2) ("A court of appeals . . .may shorten the time to serve and file briefs.").[5]

---

[5] This Court has granted similar motions to expedite appeals, with similar schedules to the one proposed, in other actions in which bondholder rights under the Republic's exchange offers were jeopardized. *See* Order Granting Motion for Expedited Appeal, *EM Ltd. v. Republic of Argentina*, No. 05-1525-cv (Apr. 4, 2005) (ordering schedule under which briefing was and oral argument completed

Here, expedited treatment is warranted for several reasons. First, expedited consideration is necessary to ensure that proceedings are not unduly delayed overseas. BNYM and its subsidiaries repeatedly have prioritized their own interests over those for whom they act as Trustee, attempting to delay proceedings overseas to avoid a determination by a foreign court that they are obligated as a matter of foreign law to make payment to the Euro Bondholders. Given the substantial sums of euros at stake in this dispute and the serious threats to the Euro Bondholders' ability to collect funds to which all agree they are entitled, expedited resolution of these questions—both here and overseas—is essential.

Expedited treatment will also permit this Court to clarify, at minimum, that the district court erred by issuing an advisory opinion, adjudging (without a hearing) that BNYM was not liable for future claims that had not yet been brought, by non-parties to the action before the court, which are governed by foreign law on which the Court received no briefing and did not purport to reference. Notably, the August 6 Order did not offer any reasoning or explanation for exculpating BNYM as against any future claims. Nor did the district court address or acknowledge the considerable objections that the Euro Bondholders raised prior to issuing the

in less than one month); Order Granting Motion for Expedited Appeal, *Capital Ventures Int'l v. Republic of Argentina*, Nos. 10-4520-cv, 10-4523-cv (Nov. 9, 2010) (ordering expedited briefing in context of a proposed Exchange Offer); Order Granting Motion for Expedited Appeal, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (Mar. 15, 2012) (ordering expedited briefing where injunction interrupted the Republic's regular payments to bondholders)

August 6 Order. Nonetheless, BNYM and its subsidiaries have pointed to the August 6 Order as grounds for delaying resolution of the Euro Bondholders' actions overseas. *See, e.g.*, BNYM Petition to the Commercial Court of Brussels (Ex. C); BNY Application to the English High Court of Justice") (Ex. D).

Expedited treatment would also benefit the Court in light of the considerable overlap between this appeal and Citibank N.A.'s already expedited appeal, as to which oral argument is scheduled for September 18, 2014. Both appeals stem from orders issued by the district court that prohibit third party banks from fulfilling independent contractual obligations under foreign law to make payments for the benefit of the beneficial holders of those bonds. Both Citibank N.A. and the Euro-Bondholders will argue that those orders are incompatible with Federal Rule of Civil Procedure 65, amount to an abuse of the district court's equitable discretion, and would place third-party financial institutions in violation of foreign law obligations. In particular, both parties will argue that it is an abuse of discretion for a United States district court to hold hostage innocent parties with foreign law obligations in an attempt to force settlement or buy a stay of an injunction in a separate suit to which they are not parties.

Judicial economy favors expedited treatment so that the Court can take under consideration the common issues presented in this case and the Citibank N.A. appeal, enabling this Court to hear expeditiously from both categories of non-

parties whose rights and interests are significantly harmed by the district court's orders: (1) the third-party banks that possess independent contractual obligations to make payments on the exchange bonds and (2) the beneficial holders of those exchange bonds, whose property the district court's orders seek to control.

Expedited treatment is also warranted in light of still-developing and quick-moving efforts by various plaintiffs to seize the Coupon Funds that BNYM is presently holding in trust for the Euro Bondholders. The Turnover Motions recently filed and presently pending before the district court seek to compel BNYM to redirect funds owed to the Euro Bondholders to plaintiffs in a separate case. *See generally* Applestein Turnover Motion (Ex. I); Dussault Turnover Motion (Ex. K). The Applestein Plaintiffs and BNYM have jointly requested a briefing schedule on the Turnover Motion that concludes on September 30, 2014. *See* Turnover Motion Joint Request (Ex. J). Unless expedited treatment is granted in this Order, there is a genuine risk that funds currently held by BNYM will no longer be available by the time this Court considers the appeal.

**B.    Proposed Expedited Schedule**

The Euro Bondholders respectfully request that the Court adopt the following briefing schedule, which will permit consolidated argument:

- Oct. 2, 2014 - Opening Briefs of Appellants due;

- Oct. 23, 2014 – Response Brief of Plaintiffs-Appellees due;

- Nov. 3, 2014 - Reply Briefs of Appellants due; and

- Oral Argument on Nov. 10, 2014, or as soon as practicable thereafter.

## C.    Consolidation of Related Appeals.

These proceedings took place in thirteen related, but unconsolidated cases. Each case presents the same issues on appeal. Plaintiffs have acted jointly in district court proceedings, and presumably will do so before this Court. In the interest of good order and efficiency, the Euro Bondholders ask that this Court consolidate each of these separate actions for the purpose of these appeals, and require all parties to abide by the same expedited briefing schedule.

## CONCLUSION

For the foregoing reasons, this Court should grant the Euro Bondholders' motion to expedite and consolidate its related appeals of the August 6 Order.

Dated: September 11, 2014
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Christopher J. Clark
Christopher J. Clark
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Email: christopher.clark2@lw.com

*Attorney for Appellants*
*Euro Bondholders*